WILLIAM A. FOSTER & CO. (INC.) ET AL. *v.* UNITED STATES (No. 3458) [1]

[1] T. D. 45673.

16

United States Court of Customs and Patent Appeals, May 2, 1932

*John R. Rafter* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks*, special attorney, of counsel), for the United States.

[Oral argument December 9, 1931, by Mr. Rafter and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

This appeal involves a large number of entries of cast polished plate glass, unsilvered, which entries were made at various ports during the years 1929 and 1930. The goods were classified by the various collectors under paragraph 222 of the Tariff Act of 1922, as modified by a proclamation of the President dated January 17, 1929, issued

pursuant to the claimed authority of section 315 of said act. T. D. 43157, 55 Treas. Dec. 123. Said paragraph 222 is as follows:

PAR. 222. Cast polished plate glass, finished or unfinished, and unsilvered, not exceeding three hundred and eighty-four square inches, 12½ cents per square foot; above that, and not exceeding seven hundred and twenty square inches, 15 cents per square foot; all above that, 17½ cents per square foot. Plate glass described in this paragraph containing a wire netting within itself, not exceeding three hundred and eighty-four square inches, 15 cents per square foot; above that, and not exceeding seven hundred and twenty square inches, 17½ cents per square foot; all above that, 20 cents per square foot.

The said proclamation of the President is in the following language:

BY THE PRESIDENT OF THE UNITED STATES OF AMERICA

A PROCLAMATION

Whereas in and by section 315 (a) of Title III of the act of Congress approved September 21, 1922, entitled "An act to provide revenue, to regulate commerce with foreign countries, to encourage the industries of the United States, and for other purposes," it is, among other things, provided that whenever the President, upon investigation of the differences in costs of production of articles wholly or in part the growth or product of the United States and of like or similar articles wholly or in part the growth or product of competing foreign countries, shall find it thereby shown that the duties fixed in this act do not equalize the said differences in costs of production in the United States and the principal competing country he shall, by such investigation, ascertain said differences and determine and proclaim the changes in classifications or increases or decreases in rates of duty provided in said act shown by said ascertained differences in such costs of production necessary to equalize the same;

Whereas in and by section 315 (c) of said act it is further provided that in ascertaining the differences in costs of production, under the provisions of subdivisions (a) and (b) of said section, the President, in so far as he finds it practicable, shall take into consideration (1) the differences in conditions in production, including wages, costs of material, and other items in costs of production of such or similar articles in the United States and in competing foreign countries; (2) the differences in the wholesale selling prices of domestic and foreign articles in the principal markets of the United States; (3) advantages granted to a foreign producer by a foreign government, or by a person, partnership, corporation, or association in a foreign country; and (4) any other advantages or disadvantages in competition;

Whereas, under and by virtue of said section of said act, the United States Tariff Commission has made an investigation to assist the President in ascertaining the differences in costs of production of and of all other facts and conditions enumerated in said section with respect to the article described in paragraph 222 of Title I of said tariff act of 1922, namely, cast polished plate glass, finished or unfinished, and unsilvered, being wholly or in part the growth or product of the United States, and of and with respect to a like or similar article wholly or in part the growth or product of competing foreign countries;

Whereas in the course of said investigation a hearing was held, of which reasonable public notice was given and at which parties interested were given reasonable opportunity to be present, to produce evidence, and to be heard;

And whereas the President upon said investigation of said differences in costs of production of the said article wholly or in part the growth or product of the United States and of the like or similar article wholly or in part the growth or product of competing foreign countries, has thereby found that the principal competing country is Belgium and that the duties fixed in said title and act do not equalize the differences in costs of production in the United States and in said principal competing country, namely, Belgium, and has ascertained and determined the increased rates of duty necessary to equalize the same:

Now, therefore, I, Calvin Coolidge, President of the United States of America, do hereby determine and proclaim that the increases in the rates of duty provided in said act shown by said ascertained differences in said costs of production necessary to equalize the same are as follows:

Increases in said duties on cast polished plate glass, finished or unfinished, and unsilvered, not exceeding three hundred and eighty-four square inches, from $12\frac{1}{2}$ cents per square foot to 16 cents per square foot; above that, and not exceeding seven hundred and twenty square inches, from 15 cents per square foot to 19 cents per square foot; all above that, from $17\frac{1}{2}$ cents per square foot to 22 cents per square foot.

In witness whereof I have hereunto set my hand and caused the seal of the United States to be affixed.

Done at the city of Washington this seventeenth day of January, in the year of our Lord one thousand nine hundred and twenty-nine, and of the Independence of the United States of America the one hundred and fifty-third.

[SEAL.]                                                         CALVIN COOLIDGE.

By the President:
    FRANK B. KELLOGG,
        *Secretary of State.*

The importers duly protested in each case, a protest which is agreed to be typical of all, being, in material part, as follows:

Protest is hereby made against your decision, liquidation and assessment of duties on plate glass, unsilvered, at 16 cents, 19 cents and 22 cents per square foot, or any of such rates, contained in the cases or packages marked and numbered as described on the entries and invoices thereof, mentioned below, to which for more certainty of description reference is hereby made.

Said merchandise is not dutiable as assessed but is dutiable under paragraph 222 of the Tariff Act or 1922 at the appropriate specific rate or rates ($12\frac{1}{2}$ cents, 15 cents and $17\frac{1}{2}$ cents per square foot), according to size, as therein provided.

The reasons for our objection to your decision, liquidation and assessment of duties are as follows:

1. You have assessed the duties on the basis and authority of and at the rates specified in a proclamation by the President of the United States of America, dated January 17, 1929, increasing the rates of duty on cast polished plate glass, unsilvered.

2. Said proclamation was and is erroneous, illegal and void, because the President, in determining and proclaiming the increased rates of duty therein specified, did not comply with the law, proceeded on a wrong principle and contrary to law, and exceeded the authority conferred on him by law.

3. The action of the President in determining and proclaiming the increased rates of duty specified in said proclamation was erroneous, *ultra vires*, illegal and void.

4. Your decision, liquidation and assessment of duties are, therefore, erroneous, illegal and void.

On the hearing in the court below, the various protests having been joined for purposes of trial, counsel for the importers announced that no contention was made by the importers that the statute, section 315, was unconstitutional, but that no express waiver was made of said point. Thereupon counsel for the Government moved to dismiss the appeal, upon the following grounds:

First, that there is not presented a justiciable subject matter upon which the judicial power of the United States, as exercised by this court, can act;

Second, that the acts of the President, as the Chief Executive of the United States, in issuing a proclamation under and by virtue of the provisions of section 315 of the tariff act, are not subject to judicial review in this or any other court;

Third, that there is no provision in the law conferring jurisdiction upon this court to review the acts of the United States Tariff Commission, in connection with the merchandise involved herein, or any other proceeding under and by virtue of section 315 of the Tariff Act of 1922;

Fourth, that the protests are insufficient to state a cause of action and fail in their office as a pleading before this court.

This motion was taken by the court to be decided with the case. Counsel thereafter entered into, and filed in the case, a stipulation of facts, as follows·

It is hereby stipulated and agreed:

1. That the merchandise covered by the protests enumerated on Schedule A, attached, which was assessed with duty at 16 cents, 19 cents and 22 cents per square foot or at any of such rates, is cast polished plate glass, unsilvered, and not containing a wire netting within itself, some of which does not exceed 384 square inches, some of which is above that and does not exceed 720 square inches and some of which is above that.

2. That such merchandise was imported into the United States subsequent to February 16, 1929, and prior to June 17, 1930, and was assessed, according to its size, at the increased rates of duty specified in the Presidential Proclamation on cast polished plate glass, unsilvered, dated January 17, 1929. (T. D. 43157.)

3. That, prior to the issuance of said proclamation, the United States Tariff Commission made an investigation of the differences in costs of production and of all other facts and conditions enumerated in section 315 of the Tariff Act of 1922, with respect to cast polished plate glass, unsilvered, and made a report of such investigation to the President.

4. That pages 1 to 57, inclusive, and charts 1 to 5, inclusive, of Exhibit 2 are a true copy of said report.

5. That the differences in costs of production and all other facts and conditions enumerated in section 315 of the Tariff Act of 1922, which are stated on pages 1 to 27, inclusive, and 45 to 57, inclusive, and on charts 1 to 3, inclusive, of said Exhibit 2, are true and correct.

6. That pages 58 and 59 of said Exhibit 2 are a true copy of said presidential proclamation.

7. That, in making this stipulation, the Government reserves the right to object to the admissibility in evidence of said Exhibit 2 and to the jurisdiction of this court.

Following this, counsel for the importers offered in evidence a printed report of the United States Tariff Commission to the President of the United States, dated August 22, 1928, being the report of said

commission referred to in the proclamation of the President herein-above set out. The report was received in evidence over objection, subject to decision as to its admissibility, with the case. The case was then submitted.

The majority of the United States Customs Court, First Division, speaking through Sullivan, Judge, overruled the motion of the Government to dismiss, sustained the objection to the admission of the report of the Tariff Commission, and overruled the several protests. The *ratio decidendi* of the court was that, in view of the stipulation, the President acted within his legal powers and that, so long as he did so act, the method by which he arrived at his conclusions was immaterial and beyond the power of the court to inquire into.

The importers bring the case here, alleging many errors. No cross appeal was taken by the Government. While the errors alleged by appellants are numerous, they may be summed up in the following contentions:

1. That said section 315 is unconstitutional.

2. That the court below erred in not admitting and considering the said report of the United States Tariff Commission in order to determine whether there was any proper basis for the finding of the President.

3. That the Tariff Commission and the President did not ascertain the differences in costs of production within the size limits as fixed by said paragraph 222 but investigated only the alleged differences in costs of cast polished plate glass, unsilvered, generally.

4. That the President based his proclamation upon an average cost of production in the principal competing country for a number of years, which said average did not properly show the differences of costs of production at the various times of importation.

As to the first suggestion made, namely, the constitutionality of said section 315, it may well be questioned whether appellants are now in any position to raise the point. However, waiving this possible view of the matter, we think the validity of the section has been fully established by *Hampton, Jr., & Co.* v. *United States*, 14 Ct. Cust. Appls. 350, T. D. 42030, affirmed in *Hampton & Co.* v. *United States*, 276 U. S. 394. Further comment upon this point is deemed unnecessary.

The first point requiring attention is the contention of the Government that no justiciable question is involved herein, for if this point is well taken there was no jurisdiction in the court below, and there is none here, over the subject matter involved. In brief, the argument of Government counsel is that the proclamation of the President, made in pursuance of the authority of said section 315 (a), is in itself proof of compliance by the President with the provisions of law and of the facts it recites; that said proclamation may not be either

directly or collaterally attacked; that it is beyond the jurisdiction of either the United States Customs Court or this court to inquire into the steps taken prior to the issuance of said proclamation.

The answer to this contention is not one of first impression in this court, but was quite clearly stated in *Hampton, Jr., & Co.,* v. *United States, supra.* There, in discussing the duties and powers of the President under said section 315, we said, *inter alia*:

It is probable that the Congress conferred upon the President this grant of power with the idea that, because of the great publicity attending the acts of the Chief Executive and his great responsibility to the people, there would be less likelihood of precipitate and ill-advised action, and greater dignity and standing would attend the accomplished act. But whatever the legislative purpose may have been, the acts of the President thereunder are entitled to no greater significance and should be measured by no other rule than that to be given and used in considering the acts of any other fact-finding official or board which the Congress may have named.

The law is not concerned as to the identity or official standing of the person who shall perform the duties required, but regards only the powers which are granted and the things which may be done as a result of such grant. An analysis of section 315 discloses that the President is not therein given any discretion as to what he shall do, but only as to how he shall do it. We have hereinbefore set out at some length the powers granted by the section, and it is not necessary to recount them again. It will suffice to say that the powers granted to the President by the section are circumscribed within narrow bounds. Under subsection (a) he may increase or decrease the rate or change a classification, but only to the extent necessary to accomplish the purpose of the Congress, and then not more or less than 50 per centum of the rates specified in the act. He may not change the classification of a dutiable article from the free list to the dutiable list, or vice versa, or from a specific to an ad valorem rate, or vice versa. Under subsection (b) he can not decrease an ad valorem rate more than 50 per centum of the rate specified in the statute, and he can not increase such rate. He can take no action under this section without a prior investigation by the United States Tariff Commission. He must proclaim a change back to the rate specified in the statute when the emergency is at an end. If, in case of any duty provision specified in the statute, the President has not proclaimed a change of rate or classification as provided in section 315, it must be presumed, as a matter of law, and agreeably to the familiar doctrine that every public official must be assumed, in the absence of proof to the contrary, to have performed his duties in pursuance to law, that, as to such rate, the President has not found that such changes are necessary to equalize the differences in cost of production in the United States and the principal competing country. The first announcement of a finding requiring such a change in duty is the proclamation to be issued by the President. Until such proclamation has been issued, the President may not, under this statute, be coerced or controlled by the mandates of the courts.

But when, in the performance of his duties, under this section, the President proclaims a change of duty, if, in so doing, he acts beyond the law or fails to comply with its express mandates, then we can not doubt that the person aggrieved thereby may find adequate relief in the courts. We need not go beyond the case at bar for an illustration of this. Here the importer has protested against the imposition of additional duties because of the alleged unconstitutionality of the act under which it was imposed, and upon that claim he is entitled to a proper hearing in the courts. Can it be denied that if, in the imposition of this rate of

duty, the President had proceeded without taking the steps directed by section 315, the importer could have set these facts out in his protest and had an adjudication thereon? To deny this would be to give to the act of the President a peculiar sanctity and inviolability not attaching to the acts of other officials of the Government performing similar fact-finding duties; and this we are neither called upon to do nor justified by the law in doing. * * *

The Supreme Court, in affirming our judgment in the case last cited, speaking through Chief Justice Taft, called attention to the fact that the President, in performing his duties under said section 315, was acting as a fact-finding agency of the Congress, carrying out "an intelligible principle" provided by Congress in the said act, and could exercise no discretion by which he might vary the will of the legislative body, as expressed in the statute. The opinion of the court very clearly establishes the line of demarcation between those duties of a member of the executive branch of the Government performed, as such, under the Constitution and laws, and those which may be performed as an agency of the legislative branch of the Government.

It must be conceded that it was in the latter capacity the President acted in the case at bar. This being true, the President was obliged to keep within the law under which he acted; otherwise, his acts became *ultra vires* and of no effect. The statute, section 315 (c), provides that—

investigations to assist the President in ascertaining differences in costs of production under this section shall be made by the United States Tariff Commission, *and no proclamation shall be issued under this section until such investigation shall have been made.* (Italics ours.)

Further, it is provided—

The commission shall give reasonable public notice of its hearings and shall give reasonable opportunity to parties interested to be present, to produce evidence, and to be heard.

The provisions of the act quoted are, we believe, conditions precedent to the issuance of a proclamation by the President under this section. It was very plainly the congressional intent that no proclamation should be issued by the legislative agent, the President, without some investigation by a body able to ascertain the facts. Such an investigation insured greater accuracy in the findings of the President. It is true, the investigation of the Tariff Commission and its conclusions and report thereon, if any, are not, under this statute, binding upon the President. He may follow them or disregard them. He may use information derived from other departments of the Government or other sources in his investigation and finding and shall take into consideration, "in so far as he finds it practicable," the various factors named in said section 315 (c). But when he acts, he must act within the limits defined by the law. *Norwegian Nitrogen*

*Products Co.* v. *United States*, 20 C. C. P. A. (Customs) 27, T. D.
45674; *United States* v. *Fox River Butter Co.*, 20 C. C. P. A. (Customs)
—, T. D. 45675.

This, as we take it, is the view expressed by the Supreme Court in
*Hampton & Co.* v. *United States, supra*, where it is said—

The Tariff Commission does not itself fix duties, but before the President
reaches a conclusion on the subject of investigation, the Tariff Commission
must make an investigation and in doing so must give notice to all parties in-
terested and an opportunity to adduce evidence and to be heard.

And again—

\* \* \* If it is thought wise to vary the customs duties according to changing
conditions of production at home and abroad, it may authorize the Chief Execu-
tive to carry out this purpose, with the advisory assistance of a Tariff Commis-
sion appointed under congressional authority.

The conditions precedent in the statute now before us are much the
same, in character, as those involved in *Union Bridge Co.* v. *United
States*, 204 U. S. 364. Section 18 of the river and harbor act of
March 3, 1899 (30 Stat. 1121), provided, in substance, that if the
Secretary of War had reason to believe that any railroad bridge was
an unreasonable obstruction to navigation, he might so order and
report the same to the United States district attorney in the proper
district, whereupon criminal proceedings provided by the same act
might be initiated and conducted against the person offending. The
act provided, however, that before any such finding or order might
be made, it was the duty of the Secretary—

first giving the parties reasonable opportunity to be heard, to give notice to the
persons or corporations owning or controlling said bridge to so alter the same as
to render navigation through or under it reasonably free, easy, and unobstructed;
and, in giving such notice he shall specify the changes recommended by Chief of
Engineers, that are required to be made, and shall prescribe in each case a reason-
able time in which to make them.

In construing this statute the Supreme Court held that the Sec-
retary of War could not act without first complying with these
conditions.

So in the case at bar, the President may not act without complying
with the conditions precedent which the statute has imposed. If he
may do so, then a part of the statute becomes a dead letter, and the
President may, at his choice, dispense with an essential element in
the "intelligible principle" of rate fixing.

The question of whether the President has proceeded in conformity
with the law in proclaiming certain changes in customs duties is,
in our opinion, a justiciable one which may be adjudicated in the
proper forum. We have already referred to the conditions precedent
of the hearing before the Tariff Commission. Section 315 also con-

tains further limitations upon the power of the President. Section 315 (a) provides—

That the total increase or decrease of such rates of duty shall not exceed 50 per centum of the rates specified in Title I of this Act, or in any amendatory Act.

Section 315 (c) provides—

\* \* \* Nothing in this section shall be construed to authorize a transfer of an article from the dutiable list to the free list or from the free list to the dutiable list, nor a change in form of duty. \* \* \*

These are, as pointed out by us in *Hampton, Jr., & Co.* v. *United States, supra,* express limitations upon the power of the President under this section, and a strict compliance therewith is essential to the validity of his act.

The importers properly sought their legal remedy when they filed protests with the collectors upon the imposition of the duties here involved. Section 514 of said tariff act provides that the importer, consignee or agent of the person paying "such charge or exaction" may file protest in writing against—

all decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character \* \* \*.

Under this statute, when the importers were compelled to pay the customs duties involved, they had a right to question the correctness of the exaction, including any matters appertaining to the legality of the President's order, and, following that, had a legal right to pursue their remedy through the United States Customs Court and this court. Indeed, if they had not done so, there is much room for doubt whether any other forum would have been open to them.

In *United States ex rel. Norwegian Nitrogen Products Co. (Inc.)* v. *United States Tariff Commission,* 274 U. S. 106, a petition had been filed in the Supreme Court of the District of Columbia for a writ of mandamus against the Tariff Commission to compel it to disclose to an importer in interest the complaint of an American producer and certain information gathered by the commission. The District Supreme Court denied the writ and on appeal to the Court of Appeals of the District of Columbia, while the court affirmed the judgment upon the grounds the case was moot, an opinion was filed finding that had the case not been moot, a writ should have issued. The Supreme Court of the United States took the case on writ of error and held that it was moot. However, in deciding the matter, the court said—

The argument is made that the President was without jurisdiction to proclaim the new tariff rate because of alleged irregularities in the conduct of the hearing before the Commission which was a prerequisite to such action by the President. But petitioner does not attack the validity of the tariff proclaimed by the President; nor is this an appropriate proceeding in which to do so.

While not directly so stating, we take it this refers to the remedy of the party by protest.

To sum up, it is our conclusion that if the President, in operating under this section, goes beyond, or contrary to, or without the observance of, the limitations and conditions of section 315, the legality of his order and proclamation may be questioned by protest, under said section 514.

We are also unable to agree with counsel for the Government that the mere recital by the President in his proclamation that he has complied with the law is conclusive of that fact. Of course, in the absence of proof to the contrary, it will be presumed that he complied with the conditions of the statute. But this does not preclude the party affected from establishing, by proper, material, and competent evidence, that such conditions have not been complied with. To hold that this might not be done would be to give to the President the sole power to pass upon the legality of his acts.

The court below committed no error in denying the motion of the Government to dismiss the appeal.

It having been determined that the issues herein are justiciable, the question arises on the protests: Were the customs duties herein assessed and collected in pursuance of law?

In determining this matter, it will be borne in mind that we are here concerned with the legality of the President's act in raising the rates on cast polished plate glass, unsilvered, from the statutory figure to that fixed by his proclamation. The question is not whether the United States Tariff Commission committed error, or whether the testimony heard by, or the findings of, the commission were sufficient to legally justify the President's finding and proclaimed rates. The President is not bound by such testimony or findings. He may arrive at his conclusions from information derived from other sources, which information may be privately conveyed and confidentially received. The various elements which he must take into consideration, as fixed by said section 315 (c), give him wide latitude. Therefore, it is fallacious to argue that possible error committed by the Tariff Commission, or failure of proof before that body, may invalidate the President's finding and proclamation. Such hearing before the United States Tariff Commission is provided by law "to assist the President," not to control him.

The only prerequisites to the validity of the President's finding and proclamation are those we have heretofore alluded to, as fixed by the law itself. If he should attempt to proclaim a rate increasing or decreasing the statutory rate more than 50 per centum, his act would be void. If he should attempt to transfer an article from the dutiable list to the free list, or from the free list to the dutiable list, or change the form of a duty, his act would be likewise *ultra vires*. If he pro-

claimed a change in rates on an article of commerce without a preceding investigation of differences in costs of production of such article by the Tariff Commission, of which hearing public notice, and a reasonable opportunity to parties interested to be present, to produce evidence and to be heard, had been given, his proclamation and rates of duty fixed would be void.

These essential prerequisites, in the case at bar, seem to have been complied with. No question is raised that the increased rates are beyond the 50 per centum maximum. The stipulation of facts establishes that prior to the issuance of said proclamation—

the United States Tariff Commission made an investigation of the differences in costs of production and of all other facts and conditions enumerated in section 315 of the Tariff Act of 1922, with respect to cast polished plate glass, unsilvered.

Such a stipulation concedes, in legal effect, that public notice was given and parties were given a reasonable opportunity to be heard, as provided by said section 315 (c).

It is argued, however, that the Tariff Commission did not investigate the differences in costs of production of cast polished plate glass, unsilvered, in the sizes mentioned in said paragraph 222, but only said differences with respect to such glass, irrespective of sizes. It seems sufficient to say, as to this contention, that in our opinion, the investigation upon this matter, as shown by the record which has been made, was sufficient to comply with the law.

It is also argued that some members of the commission computed their differences by reference to years not proper measures of such differences. These are all matters which affect the weight, not the legality, of the investigation by the commission. How much light such investigation threw upon the matter was for the President, and not for the courts, to determine. He might supplement such investigation in any way he desired. If the importers here protesting were convinced that more detailed information of the differences in cost of production as to sizes was needed, they had, in so far as the record discloses, full opportunity to appear before the commission and proffer any desired evidence on the subject.

In view of the stipulated facts the report of the United States Tariff Commission was immaterial and was properly excluded from evidence by the court below. In so concluding, it will not be understood that the court is establishing a rule that, in all cases, such reports are inadmissible. There may be cases where such reports may be competent to prove essential jurisdictional facts, herein discussed. Nor does what we have said amount to a holding that any sort of an investigation by the Tariff Commission, however irrelevant, will justify a following proclamation by the President under this section. An investigation of cotton goods, for example, would not

be a sufficient prerequisite for a change in duties in the woolen schedule. The investigation must be upon the subject matter involved.

One other observation, and the matter will be concluded. The United States Customs Court and this court are not given power, by statute, to review the proceedings of the United States Tariff Commission under this section. When a judicial review was thought necessary the Congress provided for it, as in section 316 of the Tariff Act of 1922. Not having provided directly for such a review, it was certainly not the intent of the lawmakers that we should so review such hearings, collaterally and indirectly. *Norwegian Nitrogen Products Co.* v. *United States, supra; United States* v. *Fox River Butter Co., supra.* We are not permitted to write into the law something which is not there.

The judgment of the United States Customs Court, First Division, is *affirmed.*